IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PATRICIAN ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:11-00046-N |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Plaintiff Patrician Anderson filed this action seeking judicial review of a final

decision of the Commissioner of Social Security ("Commissioner") that she was not

entitled to disability insurance benefits ("DIB") under Titles II of the Social Security

Act (the Act), 42 U.S.C. §§ 401-433. Pursuant to the consent of the parties (doc. 14),

this action has been referred to the undersigned Magistrate Judge to conduct all

proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and

Fed. R.Civ.P. 73. *See* Doc. 16. Further, plaintiff's unopposed motion to waive oral

arguments (doc. 15) was granted on August 2, 2011 (doc. 17). Upon consideration of

the administrative record (doc. 10), and the parties' respective briefs (docs. 11 and 12),

the decision of the Commissioner is hereby **AFFIRMED**.

I. Procedural History.

Plaintiff, Patrician Anderson, filed an application for disability insurance benefits

on April 8, 2007, claiming an onset of disability as of October 25, 2006 (Tr. 95-101).

Plaintiff's application was denied on May 9, 2007 (Tr. 70-74).  A hearing before an

Administrative Law Judge ("ALJ") was requested on June 22, 2007 (Tr. 75-76).

Following a hearing on April 23, 2009 (Tr. 35-67), the ALJ issued an unfavorable

decision (Tr. 15-32).  The ALJ determined that plaintiff was not disabled as defined in

the Social Security Act (Tr. 31).  Plaintiff requested a review by the Appeals Council (Tr.

5-11).  Plaintiff's request for review was denied on December 2, 2010 (Tr. 1-4), thereby

making the ALJ's decision the final decision of the Commissioner.  *See* 20 C.F.R. §

404.981 (2009).[1]  Plaintiff appeals from that decision and all administrative remedies

have been exhausted.

## II.  Issue on Appeal.

Plaintiff's sole issue on appeal is whether the Commissioner's decision should be

reversed because the ALJ failed to resolve a conflict between the Vocational Expert's

testimony and the Dictionary of Occupational Titles.  Specifically, plaintiff argues that

the jobs identified by the Vocational Expert entail a "reasoning level" ("SVP") higher

than the ALJ's limitation of the plaintiff to "simple routine tasks involving no more than

simple, short instructions and simple work-related decisions."  (Doc.11 at 4).  In

response, the Commissioner contends that "there was no actual conflict between the

vocational expert's testimony that Plaintiff could perform the cited ***unskilled*** jobs and the

---

[1] All references to the Code of Federal Regulations (C.F.R.) are to 1 the 2010 edition. All references to the Code of Federal Regulations are to part 404, which addresses claims under Title II of the Act.

*applicable* DOT information because all of the jobs have an SVP of 2, which correlates to unskilled work." (Doc. 12 at 8).

    III.  Statement of Relevant Facts and Conclusions of Law.

        A. Standard of Review.

    In reviewing claims brought under the Act, this Court's role is a limited one. Specifically, the Court's review is limited to determining: 1) whether the decision is supported by substantial evidence, and 2) whether the correct legal standards were applied. *See*, 42 U.S.C. § 405(g); Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Thus, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996); Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). Rather, the Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Chater, 84 F.3d at 1400; Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991). *See also*, Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[ ]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to

3

the Commissioner's decision. <u>Lynch v. Astrue</u>, 358 Fed.Appx. 83, 86 (11th Cir. 2009);

<u>Martino v. Barnhart</u>, 2002 WL 32881075, * 1 (11th Cir. 2002); <u>Chester v. Bowen</u>, 792

F.2d 129, 131 (11th Cir. 1986).  Harmless errors do not warrant reversal of the ALJ's

decision.  *See* <u>Patterson v. Bowen</u>, 799 F.2d 1455, 1459 (11th Cir. 1986) (noting that

where an error is harmless, there is no need to remand to the Commissioner).  Plaintiff

bears the burden of showing that an error is harmful.  *See* <u>Shinseki v. Sanders</u>, 129 S. Ct.

1696, 1706 (2009) (*citing, inter alia*, <u>Nelson v. Apfel</u>, 131 F.3d 1228, 1236 (7th Cir.

1997)).

    B.  <u>Relevant Facts</u>.[2]

    **1.     Plaintiff's vocational background**.

At the time the ALJ rendered his decision plaintiff was 51 years old (Tr. 97).

Plaintiff has a General Equivalency Diploma (GED), and  reported past work as a sewing

---

[2] Plaintiff challenges only the ALJ's finding that she could perform other work (Pl. Br. at 3-7). Plaintiff does not dispute the ALJ's findings concerning her medical condition, namely that she "has the following severe impairments: degenerative disc disease of the cervical spine; status post left shoulder rotator cuff repair, with mild impingement syndrome; depression and anxiety." (Tr. 18).  Nor does plaintiff dispute the ALJ's finding that these impairments, although severe "in the sense that each has more than a minimal effect on the claimant's ability to perform basic work activities, no acceptable medical source has concluded that the physical or mental impairments, either singly or in combination, meet or equal in severity the criteria of a listed impairment." (Tr. 19).  Finally, plaintiff offers no challenge to the ALJ's determination that she retains the residual function capacity to perform light work as defined by 20 CFR 404.1567(a), which is reduced by additional non-exertional limitations, including "no left upper extremity overhead reaching and no more than frequent left upper extremity pushing and/or pulling; . . .no more than frequent handling and/or fingering; and a limitation to simple routine tasks involving no more than simple, short instructions and simple work-related decisions, with few workplace changes." (Tr. 21).

machine operator, kitchen helper, home health aide, and lumber stacker (Tr. 61-62, 130).[3]

Plaintiff does not identify any medical evidence or other evidence in the record to support

a contention that she is now incapable of performing unskilled jobs below a reasoning

level of "2."

### 2. Vocational expert testimony.

The ALJ relied upon the testimony of Dr. Patrick Sweeney, a vocational expert.

(Tr. 60-67). Dr. Sweeney was asked to consider an individual of Plaintiff's age,

education, work history, and who had the residual functional capacity to perform a

reduced range of work at the light exertional level. The ALJ specifically limited the

hypothetical to an individual who could perform "simple routine tasks involving no more

than simple, short instructions and simple work-related decisions, with few workplace

changes" (Tr. 62-63).[4] According to Dr. Sweeney, the hypothetical individual could not

perform Plaintiff's past work (Tr. 61-63), but could perform other unskilled, light work

---

[3] Plaintiff reported that her last date worked was January 31, 2007 as a sewing machine operator. (Doc. 11)

[4] The ALJ's physical residual functional capacity determination as set forth in his hypothetical to the Vocational Expert during the hearing was as follows:

> If you would assume a hypothetical person of the claimant's age, education and prior work history and further consider the person is limited to light exertional work history with frequent left upper extremity push/pull, no overhead reaching, frequent bending, balancing, stooping, kneeling, crouching and crawling, frequent ramps and stairs, no ladders, ropes or scaffolds, no exposure to vibration or machines that vibrate, no exposure to hazardous conditions such as unprotected heights or dangerous machinery. Further that this person is limited to simple, routine tasks involving no more than simple, short instructions, simple work related decisions with few workplace changes.

(Tr. 21 and 62-63). *See also* Tr. 22-30 (ALJ's review and comparison of the documentary evidence and Plaintiff's testimony).

that existed in significant numbers in the national economy (Tr. 63-64). The first job

identified was that of cashier, which is light, unskilled work identified as DOT #

211.462-010), and for which 120,000 jobs exist in the national economy and 5,600 in

Alabama. (*Id*.) Dr. Sweeney also identified the light and unskilled work as a shipping

and receiving weigher, identified as DOT # 222.387-074, with over 88,000 jobs in the

national economy and 1,250 available in Alabama. (*Id*.). A third job was that of checker

I/greeter, which is also light, unskilled and identified as DOT # 222.687-010 (*Id*.) and for

which there are over a million available nationally, and over 5,700 in Alabama..[5] Mr.

---

[5] According to the DOT, the job of checker I/greeter has a "specific vocational preparation" (SVP) level of 2 and a "general educational development" (GED) reasoning level of 2. *See* DOT # 222.687-010, 1991 WL 672130. The jobs of cashier and shipping and receiving weigher both have an SVP level of 2, and a GED reasoning level of 3. *See* DOT # 211.462-010, 1991 WL 671840 (cashier), DOT # 222.387-074, 1991 WL 672108 (shipping and receiving weigher).

The SVP level of a given job represents the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." SVP 2 indicates "[a]nything beyond short demonstration up to and including 1 month." *See* DOT Appendix C, 1991 WL 688702. An SVP of 1 or 2 corresponds to unskilled work as defined in the Commissioner's regulations. See Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at *3 (2000) ("Using the skill level definitions in 20 C.F.R. [§§] 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2. . . . [T]he regulatory definitions of skill levels are controlling.").

The GED level of a given job represents "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. . . . The GED Scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development." See DOT Appendix C, 1991 WL 688702. GED reasoning level 2 signifies the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving few concrete variables in or from standardized situations." Id. GED reasoning level 3 signifies the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variable in or from (Continued)

Sweeney further testified that his testimony was consistent with the information

contained in the DOT (Tr. 66).

### 3. ALJ's decision.

One of the conclusions reached by the ALJ was set out as follows:

> In connection with her application for disability benefits on March 28,
> 2007, the claimant alleged that her conditions limited her ability to work
> because "she can't lift anything" presumably referring to her left shoulder
> condition (Exhibit 2E). Similarly, in her request for hearing, dated June 23,
> 2007, the claimant stated "I can't use my arm" (Exhibit 2B). Both
> statements are so inconsistent with her documented reports to, and the
> objective findings of, her treating specialists (and her daily activity reports)
> that they can only be considered unintentional exaggerations.

(Tr. 22-23, referring to Tr. 124 and Tr. 76, respectively; See also Tr. 140-155). The ALJ

gave significant weight to the opinions of plaintiff's treating specialists, Dr. Setzler and

Dr. West, finding that they "are completely consistent with the residual functional

capacity assessed herein." (Tr. 28). The ALJ then, "with a view of the evidence in the

light most favorable to the claimant, actually placed greater limitations on the claimant's

capacity to do work related activities than did Drs. Setzler and West." (*Id*.).

The following portion of the ALJ's decision establishes that he relied on the

vocational expert's testimony to conclude that Plaintiff was not disabled because, despite

her impairments, she could perform a significant number of jobs in the national economy:

---

standardized situations." Id. The Commissioner's rulings do not correlate GED levels with any
particular skill level of work.

To determine the extent of the erosion of the unskilled light occupational base caused by the claimant's limitations, a hypothetical was propounded to the vocational expert to determine whether jobs existed in the national economy for an individual with her age, education, work experience, and residual functional capacity. Dr. Patrick Sweeney, the vocational expert, testified that, given all of these factors, such an individual would be able to perform the requirements of representative occupations such as a cashier (DOT #211.462-010, light/unskilled, 5,600 jobs in the state economy and 120,000 jobs in the national economy); a shipping and receiving weigher (DOT #222.387-074, light/unskilled, 21,250 jobs in the state economy and 88,000 jobs in the national economy); and a checker 1, commonly referred to as a "greeter" (DOT #222.687-074, light/unskilled, 5,700 jobs in the state economy and 1.000.000 jobs in the national economy). Pursuant to SSR 00-4p. the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of Medical-Vocational Rule 202.21 and Rule 202.14.

(Tr. 31).

C.      Analysis.

The ALJ reasonably relied on Vocational Expert Testimony to find that the

plaintiff was not disabled because, despite her impairments, she could perform other

work available in the national economy.   The ALJ's limitation to "simple routine tasks

involving no more than simple, short instructions and simple work-related decisions" is

consistent with the regulatory definition of "unskilled" work.  Unskilled work is defined

as "work which needs little or no judgment to do simple duties that can be learned on the

job in a short period of time. . . . [A] person can usually learn to do the job in 30 days,

8

and little specific vocational preparation and judgment are needed." 20 C.F.R. §

404.1568(a); SSR 83-10, 1983 WL 31251, at *7 (1983).

The regulations also make it clear that basic work activities are "the abilities and

aptitudes necessary to do most jobs" and include "understanding, carrying out, and

remembering simple instructions." *Id.* § 404.1561(b); SSR 85-15, 1985 WL 56857, at *4

(1985). These regulations, read together, establish that unskilled work requires the ability

to understand, carry out, and remember simple instructions and duties—precisely the type

of duties the ALJ found Plaintiff retained the ability to perform.

In addition, as SSR 00-4p explains, "[u]sing the skill level definitions in 20 CFR

[§] 404.1568 . . . unskilled work corresponds to an SVP of 1-2." SSR 00-4p, 2000 WL

1898704, at *3. The three jobs identified by the vocational expert— cashier, shipping

and receiving weigher, and checker I/greeter—all carry an SVP level of 2, which

corresponds to unskilled work under the Commissioner's regulations and rulings. *See*

DOT # 211.462-010, 1991 WL 671840 (cashier), DOT # 222.387-074, 1991 WL 672108

(shipping and receiving weigher), DOT # 222.687-010, 1991 WL 672130 (checker

I/greeter). Even if the reasoning levels of these jobs seem to exceed the requirements of

unskilled work as Plaintiff proposes, it is the regulatory framework, in particular the SVP

level (which the Commissioner has found correlates to the regulatory framework), which

ultimately determines the skill level of the jobs for purposes of the ALJ's decision. *See*

SSR 00-4p, 2000 WL 1898704, at *3 (ALJ may not rely on evidence that is "inconsistent

with the regulatory definition of unskilled work"). Thus, there was no actual conflict

between the vocational expert's testimony that Plaintiff could perform the cited unskilled

jobs and the applicable DOT information because all of the jobs have an SVP of 2, which correlates to unskilled work. *See* Hurtado v. Astrue, 2010 WL 1850261, \*11 (S.D.Fla. April 14, 2010)("Most courts which have addressed this issue have held that the requirement of Reasoning Level 2 or 3 is not inconsistent with the ability to perform only simple tasks, and thus no conflict existed between the VE's job descriptions and the DOT."), *citing* Miller v. Commissioner, 246 Fed. Appx. 660, 662 (11th Cir.2007)(no remand where VE identified Reasoning Level 3 jobs for plaintiff who could do only simple, routine and repetitive work); Renfrew v. Astrue, 496 F.3d 918, 921 (8th Cir.2007) (Reasoning Level 3 not inconsistent with plaintiff's inability to do complex work); Terry v. Astrue, 580 F.3rd 471, 478 (7th Cir.2009) (Level 3 reasoning not inconsistent with plaintiff's ability to perform only simple work); Lara v. Astrue, 305 Fed.Appx. 324, 326 (9th Cir.2008) (plaintiff able to perform simple, repetitive tasks capable of doing work at Reasoning Level 2).

This case is, therefore, distinguishable from Leonard v. Astrue, 487 F.Supp.2d 1333 (M.D. Fla. 2007), a case relied upon by the plaintiff for the proposition that "conflicts between the vocational expert's testimony and the DOT cannot be brushed aside as harmless error." (Doc. 11 at 5-6). The Court in Leonard found that the vocational expert's testimony that the claimant, who the ALJ limited to simple, repetitive tasks, could return to her past work as a telemarketer conflicted with the reasoning level of 3 provided by DOT for the position of telemarketer. 487 F.Supp.2d at 1339. Pursuant to SSR 00-4p, an SVP of 3 corresponds to semi-skilled work under the regulations. SSR 00-4p, 2000 WL 1898704, at \*3. Thus, regardless of the reasoning level, the vocational

expert's testimony in <u>Leonard</u> that the claimant could perform semi-skilled work created

an obvious conflict with the ALJ's limitation to unskilled work.[6]  By contrast, in the

present case, the jobs in question had an SVP of 2. *See* Note 4, *supra*. There was,

therefore, no conflict between the vocational expert's testimony and the DOT and the

ALJ committed no error by relying on the vocational expert's testimony. [7]

In addition, it is also evident that there is no merit to plaintiff's contention that,

"by their very definitions, the jobs with a reasoning level of "2" and "3" certainly could

not be performed by Ms. Anderson."  (Doc. 11 at 5).  Several courts have concluded that

jobs with a reasoning level of 2 are consistent with simple, unskilled work.  For example,

the court in <u>Meissl v. Barnhart</u>, 403 F.Supp. 2d 981, 984-85 (C.D. Cal. 2005), reasoned as

follows:

> The ALJ's limitation for the Plaintiff, with respect to an appropriate
> reasoning level, was that she could perform work which involved simple,
> routine, repetitive, concrete, tangible tasks. Therefore, the DOT's level two
> reasoning requirement did not conflict with the ALJ's prescribed limitation.
> Although the DOT definition does state that the job requires the

---

[6] Although the district court in <u>Leonard</u> remanded the case to determine whether the ALJ's limitations were incompatible with the DOT's reasoning level of 3, the Eleventh Circuit ultimately upheld the ALJ's reliance on the vocational expert's testimony to find that the claimant could perform the telemarketer job. *See* <u>Leonard v. Commissioner of Social Sec.</u>, 409 Fed.Appx. 298, 301 (11th Cir. 2011). There, the vocational expert clarified that the DOT reasoning levels are based on the highest reasoning level a person would need to perform a job, and that in his experience, and in the opinion of "vocational rehabilitation field," the telemarketing job is considered "unskilled." *Id*.

[7] Even if the court were to find a conflict existed, the law in the Eleventh Circuit is that the ALJ is entitled to rely on vocational expert testimony even when it conflicts with the Dictionary of Occupational Titles. *See* <u>Jones v. Apfel</u>, 190 F.3d 1224 (11th Cir.1999); <u>Hurtado v. Astrue</u>, 2011 WL 1560654 (11th Cir. Apr. 25, 2011) (affirming holding in <u>Jones</u>).

understanding to carry out detailed instructions, it specifically caveats that the instructions would be uninvolved-that is, not a high level of reasoning.

403 F.Supp. 2d at 984-85. *See also* Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"); Money v. Barnhart, 91 Fed.Appx. 210, 215 (3rd Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive."); Flaherty v. Halter, 182 F.Supp. 2d 824, 850 (D. Minn. 2001) ("the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation" to "simple, routine, repetitive, concrete, tangible tasks"). Thus, substantial evidence supports the ALJ's finding that Plaintiff was not disabled because she could perform other work, i.e., at least the job of checker I/greeter.

Even if the court were to find a conflict existed the law in the Eleventh Circuit is that the ALJ is entitled to rely on vocational expert testimony even when it conflicts with the Dictionary of Occupational Titles. *See* Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir.1999)("[W]hen the VE's testimony conflicts with the DOT, the VE's testimony "trumps" the DOT. We so hold because the DOT "is not the sole source of admissible information concerning jobs."); Hurtado v. Astrue, 2011 WL 1560654 (11th Cir. Apr. 25, 2011) (affirming holding in Jones). *See also* Jones v. Astrue, 2011 WL 1490725, *2 (11th Cir. Apr. 19, 2011)("The ALJ was permitted to base his findings about these three jobs exclusively on the VE's testimony, irrespective of any inconsistency with the DOT, and was not required to seek further explanation."); Robinson v. Astrue, 2011 WL 2551284, *9 (M.D. Ala., June 27, 2011)("the law in the Eleventh Circuit is that the ALJ

is entitled to rely on vocational expert testimony even when it conflicts with the Dictionary of Occupational Titles."). *See* <u>Miller v. Commissioner of Social Sec.</u>, 246 Fed.Appx. 660 (11th Cir. 2007) ("Even assuming that an inconsistency existed between the testimony of the vocational expert and the DOT, the ALJ did not err when, without first resolving the alleged conflict, he relied on the testimony of the vocational expert. Our precedent establishes that the testimony of a vocational expert "trumps" an inconsistent provision of the DOT in this Circuit.") (citation omitted).

Consequently, substantial evidence in the record supports the ALJ's finding that the plaintiff's limitation to simple routine tasks was not inconsistent with the DOT description of the jobs of cashier (DOT #211.462-010), shipping and receiving weigher (DOT # 222.387.074), and checker I/greeter (DOT #222.687-010).

<u>Conclusion</u>.

For the reasons stated above, the undersigned concludes that the decision of the Commissioner denying plaintiff's application for disability benefits is supported by substantial evidence and is due to be and is hereby **AFFIRMED**.

**DONE** this  <u>30</u><sup>th</sup> day of August, 2011.

<span style="margin-left:40%">/s/ Katherine P. Nelson<br>KATHERINE P. NELSON<br>UNITED STATES MAGISTRATE JUDGE</span>